IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 28, 2022

**AKEEM GOODMAN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 103534   Kyle A. Hixson, Judge**

_____

**No. E2021-00914-CCA-R3-PC**

_____

The Petitioner, Akeem Goodman, appeals the Knox County Criminal Court's denial of his post-conviction petition, seeking relief from his convictions of attempted first degree murder and especially aggravated robbery and resulting effective forty-four-year sentence. On appeal, the Petitioner contends that he received the ineffective assistance of counsel because trial counsel failed to prepare for trial adequately, failed to advise him about his case, failed to interview multiple witnesses, and failed to call a witness to testify at trial. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JILL BARTEE AYERS, JJ., joined.

Bailey M. Harned, Knoxville, Tennessee, for the appellant, Akeem Goodman.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Leslie Nassios Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case relates to a shooting and robbery that occurred in front of an apartment on East Fifth Avenue in Knoxville on April 9, 2009. The Petitioner was fifteen years old at the time of the crimes. His case was transferred to criminal court, and he was indicted for attempted first degree premeditated murder and especially aggravated robbery in November 2009. He went to trial in July 2010.

The victim testified that on the afternoon before the crimes, he "shot dice" with Xavier Waters, NJ Davis, Jack Bolden, and the Petitioner in the parking lot of an apartment building. *State v. Akeem T. Goodman*, No. E2011-02044-CCA-R3-CD, 2012 WL 6633845, at *3 (Tenn. Crim. App. Dec. 20, 2012), *perm. app. denied*, (Tenn. Apr. 9, 2013). The victim and the Petitioner were friends and had shot dice together previously. *Id.* Later that day, the Petitioner telephoned the victim and wanted to buy "'some hydros'" from the victim. *Id.* The victim agreed, and they arranged to meet back at the apartment building. *Id.* When the victim arrived, the Petitioner, Mr. Davis, and Mr. Bolden were standing near the steps of Angela Price's apartment. *Id.* The Petitioner put a gun to the victim's face and told the victim to empty his pockets. *Id.* Ms. Price opened her apartment door, and the Petitioner "stuck a gun in her face." *Id.* The Petitioner told Ms. Price to close her door, and she did so. <u>Id.</u> The victim told the Petitioner to stop joking, and the Petitioner shot the victim in the leg and demanded his money again. *Id.* The victim threw his money onto the ground, and the Petitioner picked up the money and gave it to Mr. Bolden. *Id.* Mr. Bolden said the victim had seen their faces and told the Petitioner to kill the victim. *Id.* The Petitioner shot the victim multiple times, resulting in the victim's spending six months in the hospital, undergoing several surgeries, suffering a broken hip and tailbone, and having his left arm amputated. *Id.*

Ms. Price testified that she knew the victim and the Petitioner from "'the neighborhood'" and that the shooting occurred in front of her apartment. *Id.* at *1. She said that about 9:00 p.m., she looked outside and saw the Petitioner and the victim near the steps leading to her door. *Id.* The Petitioner put a gun to her face, so Ms. Price moved the gun and closed the door. *Id.* About ten minutes later, she heard multiple gunshots and heard the victim screaming. *Id.* She ran to the victim, who was bloody, and called 911. *Id.* Ms. Price told the 911 dispatcher and a Knoxville police investigator that she saw the Petitioner with a .22 caliber handgun before the shooting. *Id.* at *2. However, at trial, Ms. Price said she did not know much about guns and did not know the caliber of the gun. *Id.*

Mr. Waters testified that he and the victim were friends and that he knew the Petitioner. *Id.* at *1. About 5:00 p.m. on the day of the shooting, Mr. Waters saw the Petitioner in the parking area of Ms. Price's apartment. *Id.* The Petitioner had a gun and told Mr. Waters that the gun was a .40 caliber. *Id.* Mr. Davis and Mr. Bolden also were present, and Mr. Davis had a .38 caliber gun. *Id.* Mr. Waters went home and did not see the victim or the Petitioner again that day. *Id.* On cross-examination, Mr. Waters testified that he and the Petitioner had argued in the past. *Id.*

The police found nine .40 caliber shell casings at the crime scene, and a police officer testified that a .40 caliber semiautomatic handgun was used to shoot the victim. *Id.* at *4. The jury convicted the Petitioner as charged of attempted first degree premeditated murder and especially aggravated robbery, Class A felonies, and the trial court sentenced

him to twenty-two years for each conviction and ordered that he serve the sentences consecutively. *Id.* On direct appeal of his convictions, the Petitioner challenged the sufficiency of the evidence and consecutive sentencing. *Id.* at *1. This court affirmed the convictions and the Petitioner's effective forty-four-year sentence. *Id.* at *10.

After our supreme court denied the Petitioner's application for permission to appeal, he filed a pro se petition for post-conviction relief, claiming that he received the ineffective assistance of trial counsel. The pro se petition was filed on April 28, 2014, which was more than one-year after the date the Tennessee Supreme Court denied petitioner's Rule 11 application for permission to appeal. The post-conviction court examined the pleading and took testimony and found that the petitioner had delivered the petition to be mailed to the proper authorities at the Tennessee Department of Correction on April 4, 2014, and this was within the one-year statute of limitations. The post-conviction court ruled pursuant to Tenn. Sup. Ct. R. 28§ 2(g) and Tenn. R. Crim. P. 49(c) that the petition had been timely filed. The post-conviction court appointed counsel, and counsel filed an amended petition. Relevant to this appeal, counsel alleged in the amended petition that trial counsel was ineffective because counsel failed to investigate and present additional evidence to support the Petitioner's theory of the case, failed to call Mr. Bolden to testify at trial, and failed to have an investigator interview the victim and other witnesses before trial.

At the evidentiary hearing, trial counsel testified that she represented the Petitioner at his transfer hearing in juvenile court and represented him in criminal court. The victim knew the Petitioner "very well" before the shooting and had identified the Petitioner as the shooter. The defense's theory of the case was that the Petitioner either was not the shooter or that adults directed or "pressured" him to shoot the victim.

Trial counsel testified that the first day she was appointed to represent the Petitioner in juvenile court, "he had to be taken to a facility to get some psychiatric treatment." When the Petitioner was released from treatment, trial counsel met with him weekly or every other week. An investigator assisted trial counsel in juvenile court, and a second investigator assisted trial counsel in criminal court. The investigators interviewed Ms. Price, but the participants in the crimes were not cooperative. Mr. Bolden was represented by an attorney, and the attorney would not allow Mr. Bolden to speak with trial counsel's investigators. Trial counsel said that she did not remember if her investigators spoke with Mr. Waters before trial but that "both investigators attempted to interview everybody that was identified on the witness list."

Post-conviction counsel asked why trial counsel did not call Mr. Bolden testify at trial. Trial counsel responded that she did not know what Mr. Bolden was going to say because she had been unable to interview him. She also stated that Mr. Bolden probably would have "taken the Fifth" and that she did not think he would have told the jury that he

directed the Petitioner to commit the crimes. Trial counsel then said, "So in my opinion . . . it all actually served us better for him not to be there and for him not to be charged as a co-defendant because then we could make whatever implications we wanted against him and there was no way he could defend himself." Trial counsel said she did not think she would have called Mr. Bolden to testify "even had he been available." She acknowledged that Mr. Bolden was an adult at the time of the crimes, whereas the Petitioner was fifteen years old.

Trial counsel testified that the victim, the Petitioner, and Mr. Bolden had been friends "for a long period of time" before the shooting. After the shooting, the victim was in the hospital for several months. The defense tried to speak with him but was "not successful." At trial, the victim was very frail, had only one arm, and was "very sympathetic in terms of his medical condition." The victim and Ms. Price had identified the Petitioner as the shooter, so the shooter's identity was not "really" an issue at trial. Trial counsel thought the case was "a drug deal gone bad" and wanted to "dehumanize [the victim] to a certain extent" by showing he smoked marijuana before the shooting. However, the trial court ruled the evidence was inadmissible.

Trial counsel testified that the State never made a plea offer and that the defense's "biggest hope" was that the Petitioner would not be transferred to criminal court. When the case was transferred, trial counsel "knew that we were going to have an uphill battle." Trial counsel talked with the Petitioner and his mother about whether he should testify, and trial counsel recommended that he not testify. Trial counsel said that based on the Petitioner's age and lack of experience, the evidence against him, and the fact that a "seasoned prosecutor" was handling the State's case, she did not think the Petitioner would have "survived well" on cross-examination. Defense counsel did not call any witnesses to testify for the Petitioner at trial. Although a psychologist had evaluated the Petitioner in juvenile court, the psychologist's "impressions were not at all helpful" to the defense. The Petitioner's aunt testified for the Petitioner at his transfer hearing and at his sentencing hearing, and she was an "excellent" witness. Trial counsel wanted the Petitioner's mother to testify at sentencing, but she refused.

On cross-examination, trial counsel estimated that sixty percent of her practice involved juvenile criminal defense. She acknowledged that the Petitioner had an extensive history in juvenile court that included aggravated robberies. The psychologist who evaluated the Petitioner reviewed the Petitioner's education and medical records, tested the Petitioner's IQ, and spoke with the Petitioner's mother. Trial counsel acknowledged that the psychologist concluded the Petitioner was "dangerous," had a "conduct disorder" and "acted out," and did not have a mental illness. Trial counsel acknowledged that the Petitioner threatened to kill the juvenile court judge and a social worker from the Department of Children's Services.

- 4 -

Trial counsel testified that she received discovery from the State and that she and the Petitioner discussed the facts of his case. The proof showed that only one gun was used in the shooting, and there was no evidence Mr. Bolden fired the weapon. Trial counsel cross-examined Ms. Price about her identifying the gun as a .22 caliber handgun. Trial counsel said that the proof against the Petitioner was "overwhelming" and that she was "certain" the State did not make a plea offer. The Petitioner did not have the emotional support he needed from his family at trial, which "upset" trial counsel, but she presented proof at sentencing that resulted in the trial court's mitigating his sentences.

The Petitioner testified that he grew up in Knoxville, that he lived with his mother, and that his family "moved around." The Petitioner's stepfather abused the Petitioner's mother, and the Petitioner witnessed the abuse. While the Petitioner's case was still in juvenile court, the Petitioner was transferred to a psychiatric facility because he was beating his head on a wall. The Petitioner said he was not mentally stable at that time.

The Petitioner testified that he talked with an investigator in juvenile court "a few times" and that the investigator attempted to speak with witnesses. A different investigator worked on the Petitioner's case in criminal court, but the Petitioner did not talk with that investigator very often. Trial counsel was "consistent" in meeting with the Petitioner, and they met about every two weeks. The investigator accompanied trial counsel to the meetings sometimes. The State made a plea offer in exchange for a seventeen-year sentence, but the Petitioner had to testify against his "co-defendant" in order to accept the offer. The offer was "still on the table" the first day of trial, but the Petitioner would not accept the offer. Trial counsel and the Petitioner did not discuss the possibility of consecutive sentencing, and the Petitioner did not know what "consecutive" meant.

The Petitioner testified that he told trial counsel he was not the shooter. He also told trial counsel that "if the victim came forward he would tell you that I wasn't the shooter." However, no one from the defense spoke with the victim before trial. The Petitioner and Mr. Waters had "childish issues over females," but no one spoke with Mr. Waters either. Trial counsel told the Petitioner that it was not in his best interest to testify because the Petitioner would say something that would hurt his case. Post-conviction counsel asked if the Petitioner had wanted to testify at trial, and he responded, "Not really."

On July 13, 2021, the post-conviction court entered an order denying the petition. Regarding trial counsel's failure to call Mr. Bolden to testify at trial, the post-conviction court found that trial counsel made a strategic decision not to call him as a witness. The post-conviction court also found that the Petitioner failed to demonstrate prejudice in trial counsel's not having Mr. Bolden testify because Mr. Bolden did not testify at the evidentiary hearing. As to trial counsel's advising the Petitioner not to testify at trial, the post-conviction court accredited trial counsel's testimony that she did not think the

- 5 -

Petitioner would be a good witness, which was another strategic decision. The post-conviction court noted that the Petitioner had indicated at the evidentiary hearing that he did want to testify at trial. As for trial counsel's failure to interview the victim and other witnesses before trial, the post-conviction court accredited trial counsel's testimony that she tried to speak the with victim but was unsuccessful. The court found that trial counsel also attempted to speak with Mr. Waters and noted that trial counsel cross-examined him at trial about a prior altercation he had with the Petitioner. The post-conviction court concluded that the Petitioner failed to show that trial counsel was deficient for not interviewing the witnesses before trial. The court further concluded that the Petitioner failed to show by clear and convincing evidence either a deficiency in trial counsel's performance or any resulting prejudice to his case.

## ANALYSIS

On appeal, the Petitioner contends that he received the ineffective assistance of counsel because trial counsel failed to prepare for trial adequately, failed to advise him about his case, failed to interview multiple witnesses, and failed to call Mr. Bolden to testify. The State argues that the post-conviction court properly denied the petition for post-conviction relief. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *See Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. *Id.* However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn.

Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; *see also Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Although the Petitioner contends that trial counsel failed to prepare for trial adequately, trial counsel testified that she met with the Petitioner weekly or every other week; that a psychologist evaluated the Petitioner in juvenile court; that trial counsel received discovery; that her investigators interviewed Ms. Price and tried to interview everyone on the witness list, including the victim and Mr. Bolden; and that trial counsel had the Petitioner's aunt testify for him at his sentencing hearing. The Petitioner testified that trial counsel met with him "consistently," and this court's direct appeal opinion confirms that trial counsel cross-examined the State's witnesses and called the Petitioner's

aunt to testify at sentencing. The Petitioner has not suggested what more trial counsel should have done to prepare for trial adequately, and we agree with the post-conviction court that he has failed to show trial counsel's performance was deficient or that he was prejudiced by any deficiency.

The Petitioner also contends that trial counsel failed to advise him about his case. Presumably, the Petitioner is referring to his decision not to testify at trial, his plea offer, and consecutive sentencing. Trial counsel said that given the Petitioner's age and lack of experience, the overwhelming evidence against him, and the fact that an experienced prosecutor was going to cross-examine him, she did not think the Petitioner was going to be a good witness and advised him not to testify. The post-conviction court found that trial counsel made a strategic decision, and we note that deference is given to sound tactical decisions made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Under the circumstances in this case, trial counsel's recommendation that the Petitioner not testify was sound. As to the Petitioner's plea offer, trial counsel testified that the State never made an offer, and the post-conviction court accredited her testimony. In any event, the Petitioner refused to accept the offer because it required that he testify against another participant in the crimes, which the Petitioner refused to do.

As for consecutive sentencing, trial counsel testified that the Petitioner's aunt testified on his behalf but that the Petitioner's mother refused to testify. This court's direct appeal opinion confirms that the Petitioner's aunt testified about the "habitual domestic violence" the Petitioner witnessed as a child and that the trial court applied a mitigating factor based on the violence he witnessed. *See Akeem T. Goodman*, No. E2011-02044-CCA-R3-CD, 2012 WL 6633845, at *7-8. Nevertheless, the trial court ordered consecutive sentencing based on Petitioner's extensive criminal history and his being a dangerous offender pursuant to Tennessee Code Annotated section 40-35-115(b)(2) and (4), and the Petitioner does not contest either of those findings. Therefore, we again conclude that he has failed to show trial counsel's performance was deficient or that he was prejudiced by any deficiency.

Finally, the Petitioner contends that trial counsel was ineffective because she failed to call Mr. Bolden to testify at trial. Although Mr. Bolden did not testify at the evidentiary hearing, the Petitioner argues that we can assume Mr. Bolden's trial testimony would have been "self serving" and that trial counsel's failure to call him as a witness "severely undercut her own theory of the case and hopes of mitigation." Trial counsel stated that the defense's theory was that the Petitioner either was not the shooter or that adults directed him to shoot the victim. She did not call Mr. Bolden as a witness, though, because his attorney would not allow him to speak with her investigators and, therefore, she did not know what he was going to say at trial. In any event, trial counsel did not expect Mr.

Bolden to testify that he directed the Petitioner to commit the crimes, and she thought not calling him as a witness was beneficial to the Petitioner's case because it allowed the defense to implicate Mr. Bolden for the crimes. The post-conviction court found that trial counsel made a strategic decision not to have Mr. Bolden testify, and this court will not second-guess tactical or strategic choices of trial counsel unless those choices are based upon inadequate preparation. *See State v. Hellard*, 629 S.W.2d 4, 9 (Tenn. 1982). As discussed above, the Petitioner has not shown inadequate preparation by trial counsel. Moreover, given that Mr. Bolden did not testify at the evidentiary hearing, the post-conviction court was unable to assess his credibility or the weight and value to be accorded to his testimony. *See Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Accordingly, we affirm the post-conviction court's denial of the petition for post-conviction relief.

## CONCLUSION

Based on our review, we affirm the judgment of the post-conviction court.

_____
JOHN W. CAMPBELL, SR., JUDGE